IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>vs.<br><br>MICHAEL ANTHONY BELL,<br>Defendant. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 1:16-CR-53-TC |

On April 14, 2016, officers of the Ogden Police Department, using a hastily obtained search warrant, searched the home of Defendant Michael Anthony Bell's mother. During the search they found evidence that was used to indict Mr. Bell on federal drug and firearm charges.

He has filed a motion to suppress that evidence on the basis that the warrant and supporting affidavit were so lacking in probable cause that not even the Leon good-faith exception to the exclusionary rule[1] justifies the search. In the alternative, he asserts that the officer applying for the warrant intentionally or with reckless disregard for the truth omitted material information from, or included false information in, her affidavit, which entitles him to a Franks hearing[2] to test the validity of the warrant.

The court finds that Mr. Bell has failed to meet his burden under Franks to establish his right to challenge the warrant through an evidentiary hearing. The court also finds that even if

[1]See United States v. Leon, 468 U.S. 897 (1984).

[2]See Franks v. Delaware, 438 U.S. 154 (1978).

the warrant was not supported by probable cause, a well-trained officer could reasonably believe in good faith that the supporting affidavit established a nexus between the evidence sought and Mr. Bell's mother's house. Accordingly, the court denies Mr. Bell's motion to suppress.

## FACTS

The warrant at issue was obtained to search Mr. Bell's mother's house on Hiland Road in Ogden, Utah. The supporting affidavit was drafted based on information gathered during an unchallenged search of Mr. Bell's trailer located on Wall Avenue in Ogden.

### The Wall Avenue Search

On the morning of April 14, 2016, four Ogden Police Department officers searched Mr. Bell's trailer on Wall Avenue. Although Mr. Bell was the main tenant, he was not there during the search. His roommate Josh Misrasi was there, as was his acquaintance Thomas Kristofferson.

The officers searched the trailer based on a warrant obtained by Officer Kasey Burrell. Each of the four officers had a particular role during the search. Officers Gonnuscio and Williams searched for and documented the evidence. They gave the evidence to Officer Camryn Faiola, the evidence custodian. Officer Burrell interviewed Mr. Misrasi and Mr. Kristofferson.

They gathered physical evidence of illegal drug use and drug distribution. In Mr. Misrasi's room the officers found a syringe and a glass pipe. In the kitchen and other common areas of the trailer the officers found two digital scales, small zip lock baggies, two syringes, and a large bag containing marijuana residue. In Mr. Bell's bedroom,[3] which was locked when the

[3]Mr. Misrasi identified the room as Mr. Bell's, a statement that was corroborated by prescription medication bottles the officers found in the room.

officers arrived, they found a small amount of marijuana, three glass pipes soaking in a bleach solution, two pipes with liquid and burnt residue inside, Glad sandwich bags, and a "fanny pack" containing unused syringes, a glass pipe, and small zip lock baggies. They found traces of methamphetamine in the trailer but no packaged meth.

During the search, Mr. Misrasi told Officer Burrell that Mr. Bell spent a significant amount of time at his mother's house on Hiland Road in Ogden. He also said that Mr. Bell's mother was not living at the house because she was in a nursing home.

Mr. Kristofferson told Officer Burrell that he had smoked "a little tiny bit" of methamphetamine with Mr. Bell, "not even a 20," in the garage of Mr. Bell's mother's house just the day before. (Mot. to Suppress at 9, Docket No. 18.)[4] He also said that he did maintenance work for the trailer park and had done some work on Mr. Bell's trailer in exchange for cash.

**The Hiland Road Search Warrant**

Immediately after the Wall Avenue search, Officer Faiola used information gathered during that search to draft an affidavit and apply for a warrant to search the Hiland Road house. In the Affidavit, Officer Faiola included three written paragraphs and what appears to be a "cut and paste" list of Mr. Bell's criminal history, with the last reported incident occurring ten years earlier in 2006. The criminal history took up eighteen of the Affidavit's twenty-one pages.

In the first paragraph, Officer Faiola described her training and experience. The second paragraph (Paragraph Two) contained the factual basis upon which Officer Faiola asserted that

[4]The Motion to Suppress does not cite Mr. Kristofferson's interview transcript, and the transcript is not part of the record (although the United States proffered a recording of the interview), but the United States does not challenge Mr. Bell's proffer, so the court accepts it for purpose of this order.

probable cause existed for a warrant. (Aff. for Search Warrant, Ex. B to Def.'s Mot. Suppress, Docket No. 18-2.) Paragraph Two reads, in its entirety, as follows (the challenged portions are underlined):

> On 4/14/16, your Affiant executed a search warrant approved by Judge Bean on 4/12/16 on a residence at 1065 Wall Avenue #42. This warrant was obtained by OPD Master Officer Kasey Burrell for suspicion of distribution of narcotics, specifically methamphetamine. During the execution of this warrant, it was determined that the main tenant, Michael Bell, <u>is also residing at 464 Hiland Rd.</u>, which is his mother's home. Michael's mother's address was located through Adult Probation and Parole. <u>When officers searched the residence at 1065 Wall Avenue, officers located methamphetamine bongs, syringes, scales, marijuana, and baggies in a locked room that belongs to Michael Bell</u>. Michael's roommate, Joshua Misrasi, confirmed the bedroom belongs to Michael and prescription bottles with Michael's name were found in the bedroom. Another individual located on scene of the warrant at 1065 Wall Avenue #42, Thomas Kristofferson, stated he had smoked methamphetamine with Michael in the <u>basement</u> of Michael's mother's home on Hiland Rd yesterday (4/13/[16]) and that <u>Michael gave Thomas a small amount of methamphetamine in exchange for work that Thomas was going to perform on Michael's trailer at 1065 Wall Avenue #42</u>.

(<u>Id.</u> at 2–3 (emphasis added).) In the third paragraph, Officer Faiola concluded, based on the information in Paragraph Two, that "drugs are being sold and used from 464 Hiland Rd, therefore, endangering the community." (<u>Id.</u> at 3.)

The Hiland Road search warrant, which was issued about three hours after the Wall Avenue search was completed, allowed the officers to search for evidence of "crimes of Distribution and possession of methamphetamine." (<u>Id.</u> at 2.) Using that warrant, the officers searched Mr. Bell's mother's house and found the evidence that Mr. Bell now asks the court to suppress.

## ANALYSIS

Mr. Bell challenges the warrant, contending that it is supported by nothing more than a

bare bones affidavit which does not establish a nexus between the Hiland Road residence and the suspected crime of methamphetamine distribution. Alternatively, Mr. Bell argues that if the court finds that the Affidavit on its face creates probable cause, he is still entitled to an evidentiary hearing under Franks v. Delaware, 438 U.S. 154 (1978), to test the veracity of the contents of the supporting affidavit. In other words, Mr. Bell asserts that Officer Faiola intentionally and knowingly, or with reckless disregard for the truth, made false statements or omitted material information from the Affidavit, which, when re-examined, strip the warrant of any probable cause the court may have found.

The United States responds that the warrant is valid on its face but even if it is not supported by probable cause, the court must deny the motion to suppress because the good-faith exception to the exclusionary rule established in United States v. Leon, 468 U.S. 897 (1984), applies. The United States also maintains that Mr. Bell has not met his burden to obtain a Franks hearing, and so the court should not grant an evidentiary hearing challenging Officer Faiola's statements.

When a warrant is challenged on its face, the court looks within the four corners of the affidavit to determine whether the warrant is supported by probable cause. Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 565 n.8 (1971), cited in United States v. Beck, 139 F. App'x 950, 954 (10th Cir. 2005). Under the totality-of-circumstances test, a warrant is supported by probable cause if the information in the affidavit establishes "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). To establish probable cause, the affidavit must show a nexus between the suspected criminal activity or the evidence sought and the place to be searched. United States v. Danhauer,

229 F.3d 1002, 1006 (10th Cir. 2000).

If the court does not find probable cause, the court may analyze whether the Leon good-faith exception to the exclusionary rule applies. But a district court, in its discretion, may proceed directly to the Leon good-faith analysis without determining whether the warrant was supported by probable cause. Id. at 1005 (citing Leon, 468 U.S. at 924–25). The court chooses to follow that route.

Under Leon, evidence will not be suppressed "if the executing officer acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate." Id. at 1006. "When officers rely on a warrant, we presume they acted in objective good faith." United States v. Edwards, 813 F.3d 953, 970 (10th Cir. 2015). The defendant challenging the warrant must overcome that presumption. United States v. McKneely, 6 F.3d 1447, 1454 (10th Cir. 1993).

But that presumption has its limits. The United States Supreme Court has established four exceptions to the good-faith rule. If one of the exceptions exists, the evidence must be suppressed. Danhauer, 229 F.3d at 1007.

Mr. Bell relies on two of those exceptions.[5] The first is based on the standard set forth in Franks—i.e., when the issuing magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." Leon, 468 U.S. at 923 (citing Franks, 438 U.S. 154 (1978)). The second focuses on

---

[5]The other two exceptions, which are not at issue here, are when the magistrate wholly abandons his judicial role and when a warrant is so facially deficient that it fails to particularize the place to be searched or the things to be seized. Leon, 468 U.S. at 923.

whether an affidavit is "bare bones"—i.e., when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. at 923, 923 n.24 (1984) (internal quotation marks and citation omitted) (citing Brown v. Illinois, 422 U.S. 590, 610–11 (1975) (Powell, J., concurring in part), and Illinois v. Gates, 462 U.S. 213 263–64 (1983) (White, J., concurring in the judgment))).

**A. Allegations Under Franks v. Delaware**

Mr. Bell alleges that the Affidavit was false and misleading and so he is entitled to an evidentiary hearing under Franks to prove his allegations. To determine whether to grant an evidentiary hearing, the court engages in a two-part analysis.

First, the court must decide whether the defendant has made "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit[.]" Franks, 438 U.S. at 155–56. "The standards of deliberate falsehood and reckless disregard set forth in Franks apply to material omissions, as well as affirmative falsehoods." United States v. McKissick, 204 F.3d 1282, 1297 (10th Cir. 2000); see also United States v. Kennedy, 131 F.3d 1371, 1297 (10th Cir. 2000) (citing Stewart v. Donges, 915 F.2d 572, 582 (10th Cir. 1990)).

Second, if the defendant has shown that the Affidavit contained affirmative falsehoods or material omissions, the court disregards the false information and adds the material information originally omitted after which the court evaluates whether the warrant would have been issued if the affidavit had been presented to the magistrate in that form. Franks, 438 U.S. at 171–72; Kennedy, 131 F.3d at 1376; Stewart, 915 F.2d at 582 n.13 (10th Cir. 1990); United States v. Peterson, 103 F. Supp. 2d 1259, 1264 (D. Colo. 2000). If, after doing that, "there remains

sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required," and the court may deny the motion to suppress on that basis. Franks, 438 U.S. at 171–72.

But if the court finds that the warrant would not have been issued with the affidavit in its altered form, the court must grant the defendant an evidentiary hearing to establish that the information was indeed false. "In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Id. at 156.

Mr. Bell points to inaccuracies in Paragraph Two as well as omissions that he characterizes as material. The United States admits that the affirmative statements upon which Mr. Bell focuses are inaccurate, but it argues that the differences between the correct and the incorrect information are immaterial. The United States also questions the value of the information omitted from the Affidavit.

1. Location of Evidence in the Trailer

Mr. Bell challenges the veracity of the following statement in Paragraph Two: "When officers searched the residence at 1065 Wall Avenue, officers located methamphetamine bongs, syringes, scales, marijuana, and baggies in a locked room that belongs to Michael Bell." According to him, that statement is false and misleading because "the affidavit fails to mention that the glass pipe and syringe were found in Joshua Misrasi's bedroom (Mr. Bell's roommate), not Mr. Bell's bedroom." (Mot. at 9 (emphasis added).) While the statement in Paragraph Two

does mention syringes, it does not mention a glass pipe (unless "methamphetamine bong" means glass pipe). But even if it did mention a glass pipe, the statement would be accurate because the officers found not only syringes but also glass pipes in Mr. Bell's room. (See Gonnuscio Incident Report, Ex. C to Mot. to Suppress, Docket No. 18-3; Williams Incident Report, Ex. E to Mot. to Suppress, Docket No. 18-5; Return of Search Warrant & Inventory, Ex. A to U.S. Opp'n, Docket No. 19-1.) Whether a glass pipe and syringe were also found in Mr. Misrasi's room is immaterial.

But Mr. Bell is correct that the statement contains one inaccuracy: the digital scale was found in the kitchen, not in Mr. Bell's bedroom. Failure to include the correct location, he says, misled "the Magistrate to believe that all evidence of drug activity at the Wall Avenue residence was confined to Mr. Bell's bedroom and thus Mr. Bell." (Mot. at 9.) He contends that "the evidence of drug activity pertaining to Mr. Bell was limited to a user quantity of marijuana, and associated paraphernalia, which was a material omission from the affidavit." (Id.)

The court finds that the inaccurate statement about the scale's location and the Affidavit's failure to separate evidence in Mr. Bell's room from evidence in the kitchen were not material. The presence of other people in the trailer[6] and the location of evidence in a common area does not take away from the significance of the scale's presence, especially in a small trailer where Mr. Bell was the main tenant. Moreover, the Affidavit does not conceal the fact that Mr. Bell was not the only one living in the trailer and that another person in the trailer at the time of the

---

[6]During the hearing, counsel for Mr. Bell noted that Mr. Bell's wife also lived at the trailer. Although that fact was not in the record (or in the Affidavit), her presence does not absolve Mr. Bell of possible criminal wrongdoing.

search (Mr. Kristofferson) was a meth user. The presence of others, coupled with the fact that the scale was found outside of Mr. Bell's room, does not remove suspicion that the drug paraphernalia and digital scale were connected to Mr. Bell.

2. The "Garage" versus the "Basement"

Mr. Bell takes issue with the statement that Mr. Kristofferson smoked methamphetamine with Mr. Bell in the basement of Mr. Bell's mother's home. According to the recorded interview, Mr. Kristofferson said he smoked meth with Mr. Bell in the garage of the mother's house. Also, as Mr. Bell correctly notes, Paragraph Two does not clarify that the amount of meth the two men smoked was "just a little tiny bit . . . not even a 20." (Id.)

The reference to "basement" rather than to "garage" is not a material misstatement. The garage was as much a part of the house as the basement. In fact, the warrant expressly includes the garage in its description of the property to be searched. (See Aff. at 1 ("the premises known as 464 Hiland Rd, OGDEN, UT 84404, further described as BROWN AND CREAM COLORED TWO STORY HOME WITH A TWO CAR GARAGE . . . ."); Search Warrant at 1, Ex. A to Mot. to Suppress, Docket No. 18-1 (same).)

Nor was the failure to clarify the amount of meth smoked a material omission. Even if the officer told the magistrate that the amount of meth was very small, the fact remains that the meth was smoked at the Hiland Road house. And nothing in the Affidavit suggests that more than a user quantity was at the house.

3. Payment for Maintenance Work on the Trailer

Mr. Bell asserts that the following sentence in Paragraph Two is false and materially misleading: "Michael gave Thomas a small amount of methamphetamine in exchange for work

that Thomas was going to perform on Michael's trailer at 1065 Wall Avenue #42." The United States says that Officer Faiola "inadvertently combined" the smoking of meth with the labor Mr. Kristofferson provided to Mr. Bell. (U.S. Response to Mot. to Suppress & Mot. for Franks Hr'g at 18, Docket No. 19.) That appears to be the case. Officer Faiola did not interview Mr. Kristofferson because she was acting as the evidence custodian at the time. Nothing in the record suggests that she had the benefit of the interview transcript while drafting the Affidavit, which was written in a short period of time immediately after the Wall Avenue search. Even though the statement was incorrect, the court finds that Officer Faiola did not make the statement with a reckless disregard for the truth, much less intentionally with knowledge of its falsity.

4. Burden Under *Franks*

Under the Franks exception to Leon, negligence or innocent mistake is insufficient justification to void a warrant. Franks, 438 U.S. at 171, cited in United States v. Artez, 389 F.3d 1106, 1116 (10th Cir. 2004). Paragraph Two contains mistakes and glosses over facts gathered during the Wall Avenue search. But it appears that the content suffered from the officers' apparent need for haste. Mr. Kristofferson said he smoked meth with Mr. Bell the day before the search. The officers had just searched Mr. Bell's trailer and found evidence of distribution and use. Mr. Bell was not at the trailer during the search, and there is no evidence that he was in custody. Logically, the officers could have believed they needed to hurry in order to preempt his ability to hide evidence before they arrived with the warrant. Acting under that belief is not reckless.

The court finds that, under the circumstances, the nature of the mistakes point to carelessness in the face of need for speedy issuance of a warrant. The officer's misstatements

and omissions do not rise to the level of reckless disregard, much less deliberate falsehood. Accordingly, Mr. Bell has not met his burden under Franks to show that the officer "entertained serious doubts as to the truth of his allegations." Bruning v. Pixler, 949 F.3d 352, 357 (10th Cir. 1991) (internal quotation marks and citations omitted).

**B. "Bare Bones" Affidavit**

Mr. Bell contends that the Affidavit is bare bones and does not provide a nexus between the Hiland Road residence and evidence of methamphetamine distribution. Accordingly, he asserts, the good-faith exception to the exclusionary rule does not apply. The court disagrees.

Under the good-faith exception, the seized evidence "need not be suppressed if the executing officer acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate." Danhauer, 229 F.3d at 1005. In its analysis, the court asks whether a "reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n.23.

If the Affidavit is "bare bones"—i.e., if the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"—the evidence must be excluded. Id. at 923, 923 n.24 (internal quotation marks and citation omitted). An affidavit is "bare bones" if it contains "a mere conclusory statement that gives the magistrate virtually no basis for making a judgment regarding probable cause." Illinois v. Gates, 462 U.S. 213, 239 (1983) (emphasis added). An affidavit that is "devoid of factual support" cannot support a finding of good faith. United States v. Cardall, 773 F.2d 1128, 1133 (10th Cir. 1985) (emphasis in original).

The Affidavit here is not bare bones. It contains a series of facts to support the request

for a search warrant.

Mr. Kristofferson said he shared meth with Mr. Bell "yesterday" at the Hiland Road residence. The fact that they smoked the meth in the garage rather than in the basement does not diminish the physical link between methamphetamine and the site to be searched. (See Aff. at p. 1 (describing premises as a "BROWN AND CREAM COLORED TWO STORY HOME WITH A TWO CAR GARAGE").)

Mr. Misrasi said Mr. Bell spent a significant amount of time at the Hiland Road house. Based on that, Office Faiola apparently concluded that Mr. Bell resided there as well. Mr. Bell says that the conclusion is incorrect and contends that the officer should have known that spending significant time at another house does not mean that the location is the person's second residence. The distinction is not significant, because the key undisputed fact is that Mr. Bell had sufficient access to and control of the Hiland Road house.

The Affidavit lists evidence of distribution that was found in Mr. Bell's trailer (a scale and baggies). The tools for measuring, packaging, and using meth were present at the trailer, but the meth itself was not. From that, an experienced officer could reasonably infer that the meth must be kept somewhere else, and, in this case, that "somewhere else" could be the second of the defendant's two residences (or a second home to which the suspect had access and where the suspect had smoked methamphetamine the day before).

"Searches conducted pursuant to a warrant are favored[.]" United States v. Gonzales, 399 F.3d 1225, 1228 (10th Cir. 2005). The Leon good-faith exception is designed to encourage officers to obtain warrants from a magistrate who is trained to make the probable cause determination. Accordingly, the "threshold for establishing [the 'bare-bones affidavit']

exception is a high one." Messerschmidt v. Millender, 565 U.S. 535, 547 (2012).

A well-trained officer could maintain an objective good-faith belief that the information included in the Affidavit sufficiently linked possession and distribution of methamphetamine to the Hiland Road residence. Accordingly, the court holds that, given the facts in the Affidavit as well as the magistrate's approval of the warrant, Officer Faiola's "reliance on the search warrant was not 'wholly unwarranted.'" Danhauer, 229 F.3d at 1007. An order to void the warrant is not appropriate under the circumstances.

**ORDER**

For the foregoing reasons, Defendant Michael Anthony Bell's Motion to Suppress Evidence Seized Pursuant to Search Warrant, and in the Alternative Motion for Franks Hearing (Docket No. 18) is DENIED.

DATED this 23rd day of March, 2017.

BY THE COURT:

Tena Campbell

TENA CAMPBELL
U.S. District Court Judge