IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br><br><br><br>MICHAEL ANTHONY BELL,<br><br>    Defendant. | ORDER AND<br>MEMORANDUM DECISION<br>DENYING MOTION FOR<br>COMPASSIONATE RELEASE<br><br>Case No. 1:16-cr-53-TC |

  Defendant Michael Anthony Bell has filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), asking the court to reduce his five-year sentence in the custody of the United States Bureau of Prisons (BOP) to time served. He bases his motion on fear that his health is seriously threatened because the COVID-19 virus has spread to the prison where he is housed, the housing situation makes it practically impossible to practice self-care (particularly hygiene and social distancing), and his medical condition puts him at an unacceptable risk of serious illness or death.

  Given the record before the court, the court finds that Mr. Bell has not satisfied his burden to show an extraordinary and compelling reason to release him early, but even if he had, the balance of sentencing factors set forth in 18 U.S.C. § 3553(a) does not warrant release. Accordingly, his motion is denied.

## REMEDY OF COMPASSIONATE RELEASE DUE TO COVID-19

Mr. Bell brings his motion under 18 U.S.C. § 3582, as amended by the First Step Act[1] (often referred to as the compassionate release statute). According to the statute, the court "may reduce the term of imprisonment… after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that … extraordinary and compelling reasons warrant such reduction ... and that such a reduction is consistent with applicable policy statements by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The factors under 18 U.S.C. § 3553(a) include the nature of the crime, the defendant's characteristics and history, the danger to the public, and the sentencing range.

Before the court can reach the merits of a request for release, the defendant must show he has exhausted his administrative remedies. Once he establishes that threshold requirement, the court may look at the substance of his request.

1. **EXHAUSTION OF REMEDIES**

Before Congress passed the First Step Act, only the Bureau of Prisons could bring a motion under § 3582 requesting that the court reduce a prisoner's sentence. Now the court may consider the issue either upon a motion from the BOP or "upon motion of the defendant after the defendant has fully exhausted all administrative rights" with the BOP. 18 U.S.C. § 3582(c)(1)(A) (emphasis added). If the BOP has not filed a motion on the defendant's behalf, the defendant, to be eligible for the court's consideration of his motion for release under the Act, must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a

---

[1] Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

request by the warden of the defendant's facility, whichever is earlier[.]" Id.

On July 20, 2020, Mr. Bell filed a motion on his own behalf requesting compassionate release. (See Request to be Transferred to Home Confinement or Compassionate Release Due to COVID-19 Concerns (ECF No. 51) ("Original Pro Se Motion").) At that time, he had submitted his request to the BOP warden on July 18, 2020, only two days before filing his initial motion with the court. (See id.; Def.'s July 18, 2020 request to FCI Sheridan Warden Salazar, attached as Ex. A. to Original Pro Se Mot., ECF No. 51-1.) Because he did not wait thirty days before filing his motion, he did not satisfy the exhaustion requirement. Accordingly, the court denied his motion without prejudice. (See Aug. 28, 2020 Order & Mem. Decision Denying Without Prejudice Mot. for Compassionate Release, ECF No. 54.)

Mr. Bell has renewed his motion, in which he establishes exhaustion of remedies (i.e., more than thirty days have passed since he submitted his release request to the warden). (See Renewed Mot. Compassionate Release, ECF No. 56 ("Renewed Motion").) With that requirement satisfied, the court now reviews his request on the merits.

## 2. **REQUEST FOR RELEASE**

Mr. Bell has requested two alternative types of relief. Primarily he asks the court to reduce his sentence to time served. But in the alternative, he asks the court to order that he be released and placed in home confinement for the balance of the time he is scheduled to spend at the BOP facility FCI-Sheridan, where he is housed.

As noted above, the statute requires that a sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i). That phrase has given rise to disagreement about the court's discretion to define "extraordinary and compelling reasons."

The statute does not define "extraordinary and compelling reasons." But the United States Sentencing Commission (USSC) defined it before Congress passed the First Step Act, when Congress mandated that the USSC, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, <u>shall describe what should be considered extraordinary and compelling reasons</u> for sentence reduction, including the criteria to be applied <u>and a list of specific examples</u>…." 28 U.S.C. § 994(t) (emphasis added).

Following the mandate, the USSC, in the United States Sentencing Guidelines (USSG), issued that policy statement in USSG 1B1.13, which describes the circumstances allowing a court, upon motion by the BOP, to reduce a defendant's term of imprisonment. The Policy Statement requires a finding that "[e]xtraordinary and compelling reasons warrant the reduction" or that "the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned[.]" USSG 1B1.13(1)(A)–(1)(B). The Policy Statement also calls for a conclusion that "[t]he defendant is not a danger to the safety of any other person in the community, as provided in 18 U.S.C. § 3142(g)[.]" USSG 1B1.13(2). And, along similar lines, the Policy Statement requires the court to balance the § 3553(a) factors.

In the Commentary Application Notes, the USSC defines "extraordinary and compelling reasons" in terms of the defendant's (A) medical condition,[2] (B) advanced age,[3] (C) family

---

[2] The "Medical Condition" category applies when the defendant is (1) "suffering from a terminal illness," (2) "suffering a serious physical or medical condition," (3) "suffering a serious functional cognitive impairment," or (4) "experiencing deteriorating physical or mental health because of the aging process," and the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG 1B1.13 Commentary Application Note 1(A)(i)-(ii).

[3] The "Age" category requires that "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process;

4

circumstances,[4] or (D) "Other Reasons." USSG 1B1.13 Commentary Application Notes 1(A)-(D). The "Other Reasons" catch-all provision simply says, "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." USSG 1B1.13 Commentary Application Note 1(D).

The Policy Statement has not been amended since the First Step Act was passed, so the USSC has not yet weighed in on the change. Still, the United States, in its opposition to Mr. Bell's motion, relies on the Policy Statement, arguing that it is controlling even when the defendant, not the BOP, files the motion: "In light of the statutory command that any sentence reduction be 'consistent with applicable policy statements issued by the Sentencing Commission, § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well." (U.S. Sealed Opp'n Def.'s Emergency Mot. for Compassionate Release & Reduction of Sentence Under 18 U.S.C. § 3582(c)(1)(A)(i), at 8 n.1, ECF No. 53.)

This court has held, in a non-COVID-19 case, that the Policy Statement does not curtail its discretion to determine what circumstances are extraordinary and compelling under § 3582. In United States v. Maumau, this court

> join[ed] the majority of other district courts that have addressed this issue in concluding that it has the discretion to provide Mr. Maumau with relief, even if his situation does not directly fall within the Sentencing Commission's current policy statement. Under the First Step Act, it is for the court, not the Director of

---

and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." USSG 1B1.13 Commentary Application Note 1(B).

[4] "Family Circumstances" consist of "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children," or "(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." USSG 1B1.13 Commentary Application Note 1(C).

>   the Bureau of Prisons, to determine whether there is an "extraordinary and compelling reason" to reduce a sentence.

No. 2:08-cr-758-TC, 2020 WL 806121, *4 (D. Utah Feb. 18, 2020), stayed pending appeal, No. 20-4056 (10th Cir. June 1, 2020).  In this and other districts, courts have reached the same conclusion when addressing motions raising COVID-19-related reasons for release.

>   Since the onset of the COVID-19 pandemic, many courts "have agreed that [extraordinary and compelling] reasons exist in cases involving defendants whose serious underlying health conditions place them at an elevated risk of infection and death from COVID- 19 while in custody." United States v. Lopez, No. 18-CR-2846 MV, 2020 WL 2489746, at *2 (D.N.M. May 14, 2020) (unpublished). Of the courts that have reached such a conclusion, several "have based their finding on the Sentencing Commission's catch-all provision for 'other' extraordinary and compelling reasons" in the Application Notes. Id. Conversely, other courts have reached this determination based on "a plain reading of § 3582(c)(1)(A) after concluding that the [relevant] policy statement no longer applies." Id.  Either way, "a majority of federal district courts have found . . . that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." United States v. Perez, No. 88-10094-1-JTM, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) (unpublished).

United States v. Wadley, No. 2:18-cr-408-DAK, 2020 WL 3270880, at *2 (D. Utah June 17, 2020) (unpublished).

Here, the only possible outlet for Mr. Bell is the "Other Reasons" category, which does not provide any measurable criteria.  Consequently, regardless of whether the court follows the Policy Statement or simply looks to the statute, the analysis of the "extraordinary and compelling reasons" prong is essentially the same.

Mr. Bell has the burden to establish that he is entitled to a sentence reduction under § 3582.  United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Jackson, 468 F. Supp. 3d 59, 62 (D.D.C. 2020), appeal filed, No. 20-3046; United States v. Holroyd, 464 F. Supp. 3d 14, 17 (D.D.C. 2020), appeal filed, No. 20-3041.  For the reasons set forth below, the court finds that Mr. Bell has not established an extraordinary and compelling reason for his early

release and that balancing of the § 3553(a) factors weighs in favor of his continued incarceration.[5]

    a. <u>Extraordinary and Compelling Reasons</u>

To begin, the court finds that the existence of the pandemic is not by itself an extraordinary and compelling reason for release, and that the existence of infections in the facility where the defendant is incarcerated, without more, is also not a sufficient reason. But if the defendant is at risk for severe illness or death if he contracts the virus, that is an extraordinary and compelling reason under the statute. The United States reaches the same conclusion: "If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition satisfies the standard of 'extraordinary and compelling reasons.'" (U.S. Sealed Opp'n at 17, ECF No. 53 (internal footnote omitted).)

According to Mr. Bell, who is 54-years-old, his health issues make him "particularly vulnerable to COVID-19," and if he is infected with the virus, "he faces a very high likelihood of death or permanent bodily injury." (Renewed Mot. at 1, 3.) He says he is "morbidly obese" with a body mass index of 40, "possibly" has COPD (chronic obstructive pulmonary disease), was a smoker for many years (although he "quit some years ago"), and "suffers from a lack of lung capacity and restrictive breathing." (<u>Id.</u> at 9; Original Mot. at 5–6.) The CDC states that people with certain underlying medical conditions—including obesity (a body mass index of 30 or higher), COPD, and smoker—are at an increased risk for severe illness or death if they are

---

[5] Mr. Bell requests in the alternative that he be allowed to serve his remaining sentence in home confinement. The United States asserts the court does not have authority to order home confinement in lieu of a complete release (i.e., an order reducing Mr. Bell's sentence to time served). The court need not reach that issue because it finds Mr. Bell has not met his burden to show that circumstances justify his early release from FCI-Sheridan.

infected with the virus.[6]

Mr. Bell does not cite to anything in his medical records to support his health claims, and the court's review of the medical records did not reveal any support. (See 2019 & 2020 Medical Records, Ex. C to U.S. Sealed Opp'n to Original Mot., ECF No. 53-3.) With no evidence of a compromising condition, the court finds that Mr. Bell has not satisfied his burden to show that he falls within the high-risk category. Accordingly, he has not established an extraordinary and compelling reason for early release.

b. Balancing of the § 3553(a) Factors

Even if Mr. Bell had shown extraordinary and compelling circumstances, the court finds that a balancing of the factors in 18 U.S.C. § 3553(a) does not warrant a reduction in sentence. Those factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

---

[6] According to the CDC, older adults and people with certain underlying medical conditions are at increased risk for severe illness, or even death. CDC, CORONAVIRUS DISEASE 2019 (COVID-19), *People Who Are At Increased Risk For Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last modified Nov. 30, 2020). A person has an increased risk of severe illness if he has one or more of following CDC-identified chronic conditions: cancer; chronic kidney disease; COPD (chronic obstructive pulmonary disease); serious heart conditions such as heart failure, coronary artery disease, or cardiomyopathies; immunocompromised state from a solid organ transplant; obesity (a body mass index (BMI) of 30 or higher); pregnancy; sickle cell disease; smoking; and type 2 diabetes mellitus. CDC, CORONAVIRUS DISEASE 2019 (COVID-19), *People With Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 1, 2020).

>   (B) to afford adequate deterrence to criminal conduct;
>
>   (C) to protect the public from further crimes of the defendant; and
>
>   (D) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>  (3) the kinds of sentences available;
>
>  (4) the kinds of sentence and the sentencing range established … in the guidelines …;
>
>  (5) any pertinent policy statement … issued by the Sentencing Commission …;
>
>  (6) the need to avoid unwarranted sentence disparities among defendant with similar records who have been found guilty of similar conduct; and
>
>  (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)-(7).

In 2016, the Government indicted Mr. Bell on three counts: (1) Felon in Possession of Firearms and Ammunition (specifically, a Ruger .357 Magnum revolver, a Hi-Point rifle, and associated ammunition); (2) Possession of Controlled Substance with Intent to Distribute more than 5 grams of methamphetamine (police offers found approximately 53 grams of actual methamphetamine); and (3) Possession of Firearms in Furtherance of a Drug Trafficking Offense (the Ruger .357 Magnum revolver and the Hi-Point rifle).  On October 27, 2017, Mr. Bell pled guilty to Count 2 and, the court, considering the parties' agreed-upon sentencing range in their 11(c)(1)(C) plea agreement, sentenced him to 60 months of incarceration followed by 60 months of supervised release.  The court imposed a sentence that was four years below the low end of the original 108-to-135-months guideline range.

According to the probation officer's report, BOP estimates that Mr. Bell will be released on December 6, 2021.  (Sealed First Step Act Relief Eligibility Act Report at 3, ECF No. 52.)

Because, as Mr. Bell asserts, he is likely to spend the last half of 2021 outside the prison walls, his remaining time at FCI-Sheridan is six months.  (See Renewed Mot. at 11 ("[A]s is customary for those departing BOP custody, Mr. Bell is likely to be released either into a halfway house or home confinement at least six months before that date.").)

In Mr. Bell's case, the most important § 3553(a) factors are the nature of his offense, his criminal history and characteristics, the sentence he received, the sentence that could have been imposed, and his remaining incarceration time.

First, the circumstances of the crime and Mr. Bell's criminal history weigh against him.  Mr. Bell possessed a significant amount of methamphetamine when arrested.  The indictment and the search records, which are described in the probation officer's report, show that when he was arrested, he possessed two firearms and ammunition.  And his criminal history report shows that he has been convicted multiple times of drug trafficking offenses over the years (Pre-Sentence Report at 6–9, ECF No. 52) and has a long history of drug abuse (id. at 13).

Second, the nature and length of Mr. Bell's sentence weigh against him.  He received a relatively low sentence of five years (60 months).  Under the recommended sentencing guideline range, the low end was nine years (108 months).  And, based on calculations for good time conduct, the probation officer reports that Mr. Bell faces at most one more year of incarceration.  Of that time, Mr. Bell says he probably only faces an additional six months in FCI Sheridan.

Viewing the above circumstances as a whole, the court concludes that Mr. Bell has not shown that the weight of the § 3553(a) factors support early release.  Because he has not satisfied the second requirement under the Act, he is not entitled to the remedy he seeks.

## ORDER

For the reasons set forth above, Defendant Michael Anthony Bell's Renewed Motion for

Compassionate Release (ECF No. 56) is DENIED.

    SO ORDERED this 14th day of December, 2020.

                                     BY THE COURT:

                                     *Tena Campbell*

                                     TENA CAMPBELL
                                     U.S. District Court Judge